**2015 BNH 014**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW HAMPSHIRE**

In re:  
                                                    Bk. No. 13-11736-BAH  
                                                    Chapter 7

Thomas L. Morgenstern,  
            Debtor

Olga L. Gordon,  
Chapter 7 Trustee,  
            Plaintiff

v.  
                                                      Adv. No. 14-1090-BAH

June White,  
            Defendant

*James F. Radke*  
*Murtha Cullina, LLP*  
*Boston, MA*  
*Attorney for the Plaintiff*

**MEMORANDUM OPINION**

**I.  INTRODUCTION**

      The matter before the Court is the chapter 7 trustee's (the "Trustee") adversary complaint, in which the Trustee asserts that creditor June White ("White") recorded, post-petition, a deed on property of the bankruptcy estate in violation of the automatic stay of 11 U.S.C. § 362(a),[1] asks the

---

[1] All further references to "§," "section," or "Code" are references to title 11 of the United States Code (the

Court to declare the deed void as a matter of law, and seeks compensatory and punitive damages under § 362(k), or alternatively under § 105(a).  After a trial on the complaint, the Court took the matter under advisement.  For the reasons set forth below, the Court finds that White's procurement and recording of the deed did violate the automatic stay and that the deed is void. Additionally, the Court finds White's conduct to be deserving of a sanction under § 105(a) in the form of a compensatory damages award to the Trustee.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire.  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  FACTS

The following facts are taken from the testimony and exhibits admitted at trial.  Where necessary, the Court has taken judicial notice of the dockets of the adversary proceeding and main bankruptcy case.

*Pre-Petition Events*

The property at the center of the dispute between White and the Trustee is real property located at 8 Maple Avenue in Rye, New Hampshire (the "Property").  The debtor in this case, Thomas Morgenstern (the "Debtor"), acquired title to the property in September 1992.  Ex. 10, Deed dated 9/14/1992.  In September 2009, the Debtor transferred the Property to a revocable trust known as the Carlear Realty Revocable Trust (the "Trust").  Ex. 11, Deed dated 9/16/2009. The Debtor recorded the Trust the same day.  Ex. 12, Declaration of Revocable Trust.  The

---

"Bankruptcy Code").

Debtor became a 25% beneficiary of the Trust and Alexander Sekulic was appointed the trustee.[2] The Certification of Trust provides that the Trust was organized under the laws of the State of New Hampshire. Ex. 13, Certification of Trust, § 8.04.[3] There is no evidence that the Trust contained any property, other than the Property, during the relevant period of time in this case.[4]

In November 2009, the Trust mortgaged the Property to White to secure the repayment of a $40,000 loan. Ex. 14, Mortgage dated 11/16/2009 (the "Mortgage"). The Trust subsequently defaulted on the terms of the loan and White sued the Trust, trustee, and the Debtor in Rockingham County Superior Court (the "Superior Court"). See Ex. 15, Case Summary. Eventually White was partially successful on her claims and obtained authority from the Superior Court to conduct a foreclosure sale of the Property.[5] See Ex. 17, 1/25/2013 order awarding White a money judgment; Ex. 18, 3/11/2013 order authorizing White to conduct a judicial foreclosure on the Property.

*Post-petition Events*

The Debtor filed his bankruptcy petition under chapter 13 of the Bankruptcy Code on July 8, 2013 (the "Petition Date"). White was included as a creditor in the Debtor's creditor mailing matrix on the Petition Date. The notice was mailed to White's current address of 8 River Ave., Hampton, New Hampshire. See Ex. 2, Certificate of Notice dated 7/8/2013. On August 14,

---

[2] The Trust states that the beneficiaries are listed on a "Schedule B." Schedule B to the Trust is not in the trial record. Other testimonial evidence established that the Debtor was a 25% beneficiary. This testimony is consistent with the Debtor's bankruptcy Schedule B. See Line 19 of Schedule B, Doc. No. 13 of Bk. No. 13-11736-BAH (hereinafter "Main Case Docket").
[3] The Certification also identifies Sekulic, the trustee of the Trust, as a settlor. There is no evidence that Sekulic actually transferred any property into the Trust.
[4] Schedule A of the Trust shows that at one time the Trust may have held legal title to another real property located at 18-20 Cutler Avenue, Hampton, New Hampshire. From the other evidence in the record it appears that the Trust no longer owned this property by the time bankruptcy petition was filed. See Ex. 1 at 9, Debtor's Bankruptcy Schedule A (showing real property located at 18-20 Cutler Ave owned by the Debtor in fee simple).
[5] The Mortgage does not contain a power of sale clause.

3

2013, the Debtor converted his bankruptcy case to one under chapter 7. White also was mailed notice of the conversion at her current address. See Ex. 3, Certificate of Notice dated 8/16/2013. White asserted that she did not receive either of these notices and was not aware of the Debtor's bankruptcy petition until December 2013, when she appeared pro se in this Court and filed a motion to dismiss the bankruptcy case. See Ex. 4, White's Motion to Dismiss filed in Main Bankruptcy Case.

At the same time she was making efforts to dismiss the Debtor's bankruptcy, White attempted to foreclose her mortgage on the Property. On February 10, 2014, White recorded a series of affidavits in the Rockingham County Registry of Deeds. These affidavits were apparently intended to show that White was in possession of the Property. See Exs. 20, 21, 22, and 23. Just over a month later, Sekulic, as trustee of the Trust, executed a deed conveying the Property to White, in exchange for $50,000. Ex. 24, Deed dated 3/29/2014. White recorded this deed and promptly began taking steps to auction the Property. The trial record is not clear on the background of this transaction, but whatever happened, Sekulic apparently had reservations about deeding the Property to White, because he moved to enjoin White's auction of the Property at the beginning of May 2014. See Ex. 25, Sekulic Motion for Injunction filed in Superior Court. He also sued White on behalf of the Trust, alleging that she had fraudulently obtained the deed to the Property. See Ex. 26, Sekulic Complaint filed in Superior Court.

In early May, the Superior Court held a hearing on Sekulic's request for an injunction. The Trustee appeared at this hearing (by counsel), alerted the Superior Court to the Debtor's pending bankruptcy, and explained the Trustee's position that the bankruptcy estate had an interest

4

in the Property.   As a result of the Trustee's efforts, the Superior Court enjoined the sale indefinitely.

In response to this setback, White moved this Court for relief from the automatic stay (Main Case Doc. No. 110).   The Trustee responded by asking the Court for authority to exercise the Debtor's right to revoke the Trust (Main Case Doc. No. 116), pursuant to the terms of the Trust and New Hampshire law.   The Court held a joint hearing on White's stay relief motion and the Trustee's motion to revoke the Trust.   After reviewing the Trust documents, and based on NH RSA 564-B:6-602, the Court granted the Trustee's motion and authorized her to revoke the Trust. See Ex. 28, Court's order dated July 28, 2014.   At this time White voluntarily withdrew her stay relief motion.   Several months after receiving authority to revoke the Trust, the Trustee filed this adversary proceeding.

*The Adversary Proceeding*

The Trustee's complaint contains four counts.   Count I seeks a declaratory judgment that the deed transferring the Property from the Trust to White is void.   Counts II and III seek compensatory and punitive damages pursuant to § 362(k), respectively.   Finally, Count IV seeks, in the alternative, damages pursuant to § 105(a).   After various pretrial motions and a brief period of discovery, the Court held a trial on the complaint.

The Trustee's case at trial was relatively straightforward.   Only one witness testified, the Trustee herself.   The evidence introduced was virtually all documentary, the substance of which the Court discussed above.   The Trustee took the position that it was immaterial whether White actually received notice of the bankruptcy case at its filing because at the time White accepted and recorded the deed to the Property, she was undoubtedly aware of the bankruptcy case, having filed

5

numerous pleadings with the Court.  In terms of actual damages, the Trustee presented evidence of her counsel's legal fees and costs to litigate this adversary proceeding, which amount to $84,863.96—exclusive of time spent at trial.  See Ex. 32, Murtha Cullina LLP Invoices.  At the conclusion of her case, the Trustee asked the Court for permission to set-off any judgment in her favor against any claim White had against the bankruptcy estate.

    White's defense focused on what she sees as the unreasonable and vindictive nature of the Trustee's complaint.  To this end, White presented evidence of settlement negotiations between herself and the Trustee.  This evidence was designed to show that the Trustee should have settled with White, rather than going to trial.  White also presented several other defenses.  White argued that the Property was not property of the bankruptcy estate because its legal title was held by the Trust, not the Debtor, and, accordingly, that the automatic stay did not apply.  White also argued that her right to foreclose on the Property had been established pre-petition and that the recording of the deed was a ministerial act that did not violate the automatic stay.  As a result, White claimed that the deed had effectively transferred the Property, which she now owned free and clear of any interest of the bankruptcy estate.

    At the conclusion of the trial, the Court took the matter of advisement, after giving White an opportunity to respond in writing to the Trustee's request for a setoff.

### III. DISCUSSION

    The claims in this adversary proceeding present three distinct legal issues.  The Court will address each in turn.  First, the Court will discuss how White's actions violated the automatic stay.  Second, the Court will set out the reasons it finds that the Trustee is not an "individual"

within the meaning of § 362(k) and accordingly not entitled to recover damages under that section. Finally, the Court will address an appropriate measure of damages under § 105(a).

    A.    <u>The Stay Violation</u>

        *i.*    *The Property is Property of the Bankruptcy Estate*

On the Petition Date, the Property became property of the bankruptcy estate pursuant to § 541(a). Section 541(a) defines property of the estate:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

§ 541(a)(1). Section 541's invocation of the term "equitable interest" is critical. An equitable interest is "[a]n interest held by virtue of an equitable title or claimed on equitable grounds, such as the interest held by a trust beneficiary." <u>Black's Law Dictionary</u> 885 (9th ed. 2009). Here, the Debtor was both a settlor and beneficiary of the Trust, and these roles provided the Debtor with broad powers to revoke and amend the terms of the Trust.

New Hampshire law compels the Court's finding that the Property is property of the bankruptcy estate. <u>See</u> <u>Butner v. United States</u>, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.") The New Hampshire Uniform Trust Code ("NH UTC")[6] provides:

---

[6] The NH UTC provides a series of default rules that specific trust provisions may override. Section 564-B:1-105(a) provides: "Except as otherwise provided in the terms of the trust, this chapter governs the duties and powers of a trustee, relations among trustees, and the rights and interests of a beneficiary." Certain provisions of the NH UTC are

>  (a) Whether or not the terms of a trust contain a spendthrift provision, the following rules apply:
>> (1) During the lifetime of the settlor, the property of a revocable trust is subject to claims of the settlor's creditors.

NH RSA 564-B:5-505(a)(1).  The Trust is a revocable trust, does not contain a spendthrift provision, and the settlor of the Trust was the Debtor.  Accordingly, absent the bankruptcy filing, the Debtor's creditors would have been able to reach the Property to satisfy their claims against the Debtor.  The Trustee, who is charged with collecting and distributing property available to satisfy the Debtor's creditors, has a state-law defined equitable interest in the Property pursuant to the NH UTC.

In addition to the power afforded by NH RSA 564-B:5-505, the bankruptcy estate retained the Debtor's powers as settlor of the Trust.  The actual Trust is silent as to the extent of the settlor's powers.  <u>See</u> Ex. 12, Declaration of Trust.  Accordingly, the default provisions of the NH UTC govern.  NH RSA 564-B:1-105(a).  NH UTC § 6-602(a) provided the Debtor, as settlor, with broad power to "revoke or amend" the Trust.  NH RSA 564-B:6-602(a).[7]  These powers became property of the estate on the Petition Date.  <u>See</u> <u>Marrama v. DeGiacomo (In re Marrama)</u>, 316 B.R. 418, 423 (B.A.P. 1st Cir. 2004) (holding that, under Massachusetts law, power to revoke trust property became property of bankruptcy estate).  The Debtor's retention of

---

mandatory, however, and may not be overridden by specific provisions of a trust.  Sub-section (b) goes on to clarify that "[t]he terms of a trust prevail over any provision of this chapter except . . . (5) the effect of a spendthrift provision and the rights of certain creditors and assignees to reach a trust as provided in article 5."  In the following discussion, the Court cites to various provisions of the NH UTC.  The Court finds that none of the provisions of the Trust are inconsistent with the relevant default or mandatory provisions of the NH UTC.

[7] "(a) Unless the terms of a trust expressly provide that the trust is irrevocable, the settlor may revoke or amend the trust. This subsection does not apply to a trust created under an instrument executed before the effective date of this chapter."  The provisions in this section applying to more than one settlor are immaterial, despite the Declaration of Trust's statement that Sekulic, the trustee, was also a settlor, because there is no evidence that he actually contributed any property to the Trust.

these broad powers over the Trust and Property also require the Court to find that the Property is property of the estate.[8]

Bankruptcy courts routinely hold that when a debtor has retained these powers, the trust property itself—not just the Debtor's beneficial interest—is bankruptcy estate property.  See Beatrice v. Braunstein (In re Beatrice), 296 B.R. 576, 581 (B.A.P. 1st Cir. 2003) (Debtor retained "broad powers" over trust "compel[ling] the conclusion that the [t]rust res" is property of the estate.); Riley v. Tougas (In re Tougas), 338 B.R. 164 (Bankr. D. Mass. 2006) (same); In re Nichols, 434 B.R. 906 (Bankr. M.D. Fla. 2010) (finding property owned by revocable trust, where debtor was settlor and beneficiary, to be property of bankruptcy estate).  The Court finds these cases persuasive, given their similarity to this case.

White has asserted two arguments against the Court finding that the Property was property of the estate.  The first of these arguments, that Trust's holding of the legal title to the Property kept it out of the estate, is foreclosed by the Court's discussion above.  White's second argument requires additional analysis.

White argues that she completed her non-power of sale foreclosure before the Petition Date and, accordingly, that the Property was not property of the Trust at that time and could never have become property of the estate.  It is clear from the facts of this case that White had not completed the process outlined in the foreclosure statute before the Petition Date.

NH RSA 479:19 sets out the method for a mortgagee to perform a non-power of sale foreclosure:

---

[8] The Debtor's status as a settlor—retaining the default powers of a settlor under the NH UTC—and beneficiary of a revocable trust are both critical factors in the Court's finding.  The Court expresses no opinion whether the same result would obtain if any of these facts were different.

> The right of the mortgagor and all persons claiming under him to redeem any mortgaged premises shall be forever barred and foreclosed by the mortgagee in the following modes:
> I. Entry Under Process. By entry into the mortgaged premises under process of law and continued actual possession thereof for one year.

NH RSA 479:19(I).[9] White obtained the judgment authorizing her to foreclose on the Property on March 11, 2013. This was arguably the earliest time at which she could have established an "entry" into the Property. See Ex. 18, Superior Court Order dated 3/11/2013 ("Accordingly, the Court therein [sic] gives her judicial authority to foreclose on the mortgaged property."). The Petition Date fell only a few months later, on July 8, 2013, which does not leave enough time for White to have "continued actual possession" for an entire year. A foreclosure judgment alone is not sufficient to complete the process under NH RSA 479:19. Walker v. Chessman, 75 N.H. 20 (1908) ("The mortgage subsisted after the judgment as before, and could only be foreclosed by the defendant's possession continued for a year."). Here, because White did not have possession for the requisite year, she did not complete the foreclosure process. When the Debtor filed his bankruptcy petition, the Trust still owned the Property, and, accordingly, it became property of the estate under § 541(a).

### ii. White's Actions Violated the Automatic Stay

Given the Court's conclusion that the Property is property of the estate, it is clear that White's post-petition actions violated the automatic stay. The automatic stay operates as a statutory injunction upon the filing of a bankruptcy petition. Section 362(a) provides in relevant part:

---

[9] There is no evidence that White attempted to comply with NH RSA § 479:19(II) or (III), which involve publishing notices in a newspaper, so the Court omits any discussion of these provisions.

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of—
>
> . . .
>
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
> (4) any act to create, perfect, or enforce any lien against property of the estate;

White engaged in several acts which were specifically designed to gain control of the Property. The most important of these acts was White's accepting a deed to the Property. She also recorded that deed and engaged in a number of other ancillary actions, such as recording affidavits, that were presumably aimed at furthering her attempt to foreclose on the Property. The automatic stay prohibited all of these actions. By accepting the deed, White acted to "obtain possession of property of the estate." § 362(a)(3). By recording the affidavits White engaged in "the enforcement . . . against property of the estate, of a judgment obtained before the commencement of the case under this title." § 362(a)(2). White's attempted foreclosure was also an act "to exercise control over property of the estate" and an act to "enforce [her] lien against property of the estate." § 362(a)(3) – (4). These actions interfered with and attempted to diminish the value of the bankruptcy estate's interest in the Property. This Court finds that those actions violated the automatic stay.

Acts in violation of the automatic stay are void. Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 976 (1997) (highlighting a circuit split on the subject and siding with the majority view that considers stay violations void rather than voidable). Because the deeding of the Property from the Trust to White was a transfer in violation of the automatic stay, the deed itself is void. Although, White argues that the recording of the deed falls within a recognized

11

exception for "ministerial acts," see Soares at 974, this argument does not make it out of the gate—the deed was void ab initio and its recording a nullity.

For these reasons, the Court finds that the deed is void and shall enter judgment in favor of the Trustee on Count I of the complaint.

    B.    <u>The Trustee is not an Individual under 11 U.S.C. § 362(k)</u>

Section 362(k) expressly empowers an individual harmed by a violation of the automatic stay to recover damages from the violating party. The Trustee casts herself as an "individual" within the meaning of this section, and seeks damages from White for her violation of the stay. This section provides:

> Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k)(1).[10]

The Trustee argues that because she, Olga Gordon, is a natural born individual within the ordinary meaning of that term, she is entitled to recover under § 362(k). The Trustee points to § 321(a) to support this position. Section 321(a) states that two categories of "persons" are eligible to serve as a bankruptcy trustee: an "individual" under (a)(1) or a "corporation" under (a)(2). The Trustee is obviously not a corporation; she is an individual, and no one disputes that she is a duly appointed chapter 7 trustee under § 321(a)(1). The Trustee argues that the Court should take the term "individual" in § 321(a)(1) to have the same meaning as that of "individual" in § 362(k).

This argument does not persuade the Court. Case law is split on the subject of whether a trustee may recover under § 362(k). See Havelock v. Taxel (In re Pace), 67 F.3d 187, 193 (9th

---

[10] § 362(h) was recodified as § 362(k). Some of the decisions the Court cites to contain references to the old codification. For the sake of clarity, the Court will correct these references where necessary.

Cir. 1995) (holding that a trustee cannot recover under § 362(k) because it is the bankruptcy estate and not the trustee who is injured by a stay violation); In re Sayeh, 445 B.R. 19, 27 (Bankr. D. Mass. 2011) (defining "individual" more narrowly results in a better reading of § 362(k)).  But see Bohm v. Howard (In re Howard), 428 B.R. 335, 338 (Bankr. W.D. Pa. 2010) (applying broad definition of "individual" and permitting trustee to recover under § 362(k)); Moser v. Mullican (In re Mullican), 417 B.R. 389, 403-04 (Bankr. E.D. Tex.) (same).   The Court agrees with the cases that apply the more narrow definition of individual, because a trustee represents the bankruptcy estate, not herself as an individual.   Accordingly, the Court finds that the Trustee may not seek relief under § 362(k).

      C.      Sanction under 11 U.S.C. § 105(a)

The Court's finding that the Trustee may not avail herself of § 362(k) does not affect the Court's decision in a practical way.   The Court may sanction White for violating the automatic stay under § 105.[11]   See See Spookyworld, Inc. v. Town of Berlin (In re Spookyworld), 346 F.3d 1, 8 (1st Cir. 2003) ("Prior to the enactment of section 362([k]) in 1984, contempt orders issued under section 105(a), including awards of damages, were routinely used to punish violations of the automatic stay.").   In order to sanction a party for violating the automatic stay under § 105(a), the Court must find clear and convincing evidence that the party had knowledge of the bankruptcy filing and carried out the acts that constitute the violation with general intent.   Lumb v. Cimenian (In re Lumb), 401 B.R. 1, 6 (B.A.P. 1st Cir. 2009) (citing Pratt v. Gen. Motors Acceptance Corp. (In re Pratt), 462 F.3d 14, 17 (1st Cir. 2006).   The Court must also find that the statutory

---

[11] "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

provisions defining the scope of the automatic stay are "clear and unambiguous as to whether the conduct in question is prohibited." In re Sayeh, 45 B.R. at 28.

As an initial matter, the Court finds it legally unambiguous that White's course of conduct, including accepting and recording the deed, was prohibited by the automatic stay. White plainly tried to take ownership of the Property during the bankruptcy case, and but for the stay, this act would have deprived the estate's creditors of a potentially valuable asset.

The Court also finds clear and convincing evidence that White's violation of the automatic stay is sanctionable. White was unquestionably aware of the bankruptcy case when she engaged in efforts to foreclose on the Property and accepted and recorded the deed; she took those actions after filing several motions in the bankruptcy court. Indeed, there is clear evidence that White was aware of the existence of the automatic stay in general, as she filed a motion for relief from stay after the Trustee enjoined White's auction of the Property.[12] Finally, White's actions were intentional; she was candid about this during the trial. It is clear that White simply thought her actions to be permissible. This belief is not sufficient for White to avoid paying a sanction, however. See Fleet Mortg. Group, Inc. v. Kaneb, 196 F.3d 265, 268 (1st Cir. 1999) ("A good faith belief in a right to the property is not relevant to a determination of whether the violation was willful.").

Based on the foregoing, the Court finds that a sanction is warranted. Section 105(a) empowers the Court to sanction a party where the sanction is "demonstrably necessary to preserve a right elsewhere provided in the Code." Ameriquest Mortg. Co. v. Nosek (In re Nosek), 544 F.3d 34, 44 (1st Cir. 2008) (quoting Noonan v. Sec'y of Health & Human Servs. (In re Ludlow

---

[12] For the sake of clarity, the Court notes that White's stay relief motion was filed after she began the actions that violated the automatic stay; the Court points out the filing of the motion to demonstrate that White was aware of the legal significance of the automatic stay during the case.

14

Hosp. Soc'y, Inc.), 124 F.3d 22, 27 (1st Cir.1997)).   Here, the Court will award the Trustee actual damages in the form of attorney's fees as a sanction to prevent the estate from shouldering the cost of marshaling this asset.

      D.      <u>Damages Award Amount; Setoff Rights</u>

The Trustee presented evidence of actual damages in the form of legal fee invoices of her counsel, Murtha Cullina LLP.  <u>See</u> Ex. 32.  The Court will award a reasonable amount of attorney's fees as a sanction using the standard lodestar approach.  The Court takes no issue with the hourly rates charged by the Trustee's attorneys.[13]  The Court will confine its analysis here to the amount of time spent by the Trustee's attorneys, as described in the fee invoices.  In this analysis, the Court will reduce time expended "on unnecessary, duplicative, or overworked tasks." <u>Berliner v. Pappalardo (In re Sullivan)</u>, 674 F.3d 65, 69 (1st Cir. 2012). "This approach is flexible."  <u>In re Taal</u>, 540 B.R. 24, 31 (Bankr. D.N.H. 2015). "The court need not follow a rigid prescription when reducing fees; it may either eliminate specific hours or reduce the overall fee award to a reasonable amount." <u>In re Little</u>, 484 B.R. 506, 511 (B.A.P. 1st Cir. 2013).

In total, the Trustee is seeking to recover $84,430 in legal fees and $433.96 in expenses for working on this adversary proceeding from the filing of the complaint up to but not including the half-day trial.  The fee request does not include any time the Trustee's attorneys spent resolving White's stay violation before the adversary proceeding was filed.  After reviewing the fee invoices provided in Exhibit 32, the Court finds that the Trustee's attorneys have substantially overbilled for this work.  From the fee invoices, this overbilling appears to be the result mainly of overworked tasks, with some time entries that appear unrelated to White's stay violation.  There

---

[13] Exhibit 32 contains no explicit statement of the hourly rates, but the court deduces that the rates for attorneys varied from $230 to $380 per hour.

15

also appears to be some duplication of attorney time. The Court will highlight several different examples of these issues.

The Court will start with examples of overworked tasks. The Trustee's attorneys spent about 40 hours drafting and filing the complaint. This is far too much time spent drafting a four count complaint where most of the factual allegations were drawn from official documents or the Court's docket. Next, the Trustee's attorneys spent about 41 hours addressing White's combined motion to dismiss, motion to abandon and request for ruling on whether the adversary proceeding was core or non-core. While these pleadings raised a number of different legal issues, the Court does not find that these issues were exceedingly complex. The amount of time spent addressing these pleadings is simply too great.

The Trustee's attorneys also spent a great deal of time drafting a joint final pretrial memo: about 30 hours. The joint final pretrial memo deals with largely the same facts and issues that were raised in the motion to dismiss and related pleadings. The Court finds that this was too much time spent drafting what should have been a summary of the facts and issues presented for trial. The Trustee's attorneys also spent about 30 hours working on witness outlines for the trial. The Court finds that at a sizeable portion of these hours involved duplicated effort of different attorneys in the Trustee's office; just before the adversary went to trial, Attorney Radke began working on this case, and spent a significant amount of time re-working witness outlines, when that work had already been performed, to a certain extent, by Attorney Wintle.

Finally, certain items appear in the invoices that the Court finds are unrelated to this adversary proceeding. For example, there are numerous references to the preparation and recording of a lis pendens and suggestion of bankruptcy Ex. 32, at 15 (2.9 hours), and to the Town of Rye's recording of a tax lien or tax deed. In reviewing the trial exhibits and testimony, the

Court does not see how either of those topics pertained to the adversary, as opposed to the Main Case.

For the reasons described above, the Court finds that the Trustee's fee request should be significantly discounted. Rather than cutting specific hours, the Court will simply reduce the overall sanction amount by a specific amount. The Court finds that a two-thirds discount is fair under these circumstances. This results in an attorney fee award of $28,143.33.[14] The Court takes no issue with the expenses of $433.96 listed in Exhibit 32. The sum of these two amounts is $28,577.29. To this amount the Court shall add an additional $1,050, representing the approximate amount of time the Trustee's attorney spent at the trial, as Exhibit 32 only included time up until the trial. This final amount of $29,627.29 shall serve as the sanction for White's stay violation.

Additionally, the Court will grant the Trustee's request to set off this sanction against any distribution made to White on her claims against the estate. White should not receive any distribution from the bankruptcy estate, unless and until the sanction is paid, given that her stay violation has substantially delayed the Trustee's administration of this estate. The Court declines to award punitive damages; White is a pro se party and the legal fees incurred by the Trustee that White must pay serve as a sufficient sanction.

## IV. CONCLUSION

For the reasons set forth above, the Court will enter judgment in favor of the Trustee on Count I and IV and will enter judgment in favor of White on Counts II and III.

---

[14] Total fees evidenced in Exhibit 32 amount to $84,430. One-third of this amount, and correspondingly a reduction of two-thirds, is $28,143.33 (84,430 / 3).

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate judgment consistent with this opinion.

ENTERED at Manchester, New Hampshire.

Date:   December 24, 2015         /s/ Bruce A. Harwood
                                  Bruce A. Harwood
                                  Chief Bankruptcy Judge